UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
FREDDY LUNA, RAFAEL CASTRO and          :
FIDEL SANCHEZ,                          :
                                        :
                 Plaintiffs,            :          **REPORT AND RECOMMENDATION**
                                        :
           -against-                    :          16 Civ. 1411 (ARR) (VMS)
                                        :
GON WAY CONSTRUCTION, INC.,             :
SWEENEY T. LEE a/k/a JONATHAN LEE and   :
WENDELL LEE,                            :
                                        :
                 Defendants.            :
--------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Freddy Luna, Rafael Castro and Fidel Sanchez (collectively "Plaintiffs") bring

this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the

New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., as amended by the Wage Theft

Prevention Act ("WTPA"), N.Y. Lab. Law § 195. See generally Complaint, ECF No. 1.

Plaintiffs name as Defendants Gon Way Construction, Inc. ("Gon Way"), Sweeney T. Lee a/k/a

Jonathan Lee and Wendell Lee (collectively "Defendants"). Id. ¶¶ 3-5. Plaintiffs seek to recover

unpaid minimum wages and overtime compensation, "spread-of-hours" premiums, liquidated

damages, pre-judgment interest, attorneys' fees and costs. Id. Despite proper service of the

Summons and Second Amended Complaint, Defendants failed to answer or otherwise defend

against this action. Plaintiffs now move for a default judgment pursuant to Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 55(b)(2). See ECF Nos. 12-14. The Honorable Alleyne R. Ross

referred the motion to the undersigned for a Report and Recommendation in accordance with 28

U.S.C. § 636(b). See ECF No. 15. For the following reasons, the Court respectfully

recommends that the District Judge **enter** a default judgment against Defendants, **order** that

Defendants are jointly and severally liable for the damages, which are set forth in Appendix I, and deny Plaintiffs' other requests for relief.[1]

## I.   BACKGROUND

The following facts are derived from the Complaint, which is accepted as true only for purposes of this Report and Recommendation, and from the motion for default judgment.

Defendant Gon Way Construction, Inc. was and is a domestic corporation with its principal place of business is 33-21 Farrington Street, Flushing, New York 11354.  Compl., ECF No. 1 ¶ 4.  Defendants Sweeney T. Lee a/k/a Jonathan Lee and Wendell Lee are principals of Gon Way.  Id. ¶¶ 6 & 8.  Between 2013 and 2016, the gross receipts of Gon Way were not less than $500,000.00.  Id. ¶¶ 9-12.  At all relevant times, Defendants were engaged in the construction industry, an industry influencing commerce within the meaning of 29 U.S.C. § 203, and regularly handled products which had been moved in commerce.  Id. ¶¶ 15-16.  Defendants Jonathan Lee and Wendell Lee had the power to hire and fire employees at Gon Way, controlled the terms of Plaintiffs' employment in that they would tell them what tasks to complete and within what timeframe they needed to be completed, controlled the work schedule of all of the Gon Way employees, and controlled the rates and methods of payment of each employee of Gon Way, including Plaintiffs' pay rates and methods of pay.  Id. ¶¶ 35-39.  Plaintiffs performed their duties for Defendant Gon Way at the direction and under the control of Defendants Jonathan Lee and Wendell Lee.  Id. ¶ 40.  Defendants Jonathan Lee and Wendell Lee exercised close control

---

[1] Although Mr. Kumar's motion requests attorneys' fees and costs, he does not provide evidence of his credentials, his billing rate, contemporaneous billing records, or evidence of costs.  The Court thus respectfully recommends denying this portion of the motion without prejudice.

over the managerial operations of Gon Way, including the policies and practices concerning employees and employee wages.  <u>Id.</u> ¶ 41.

Plaintiffs' primary duties did not include the exercise of discretion and independent judgment with respect to any matters of significance.  <u>Id.</u> ¶ 17.  Defendants employed Mr. Luna from on or about June 1, 2011 until on or about August 31, 2015.  <u>Id.</u> ¶ 19.  Mr. Luna was assigned various duties including, but not limited to, installing air ducts and vents for central air-conditioning and heating.  <u>Id.</u> ¶ 20.  Plaintiff Luna worked Monday through Friday from 8:00AM until 7:00PM.  <u>Id.</u> ¶ 21.  Plaintiff Luna's pay rate was $25.00 per hour.  <u>Id.</u> ¶ 22.

Defendants employed Mr. Castro from on or about June 1, 2013 until on or about October 31, 2015. 24.  <u>Id.</u> ¶ 23.  Mr. Castro was assigned various duties including, but not limited to, assisting in the installment of air ducts and vents for central air-conditioning and heating.  <u>Id.</u> ¶ 24.  Plaintiff Castro worked Monday through Friday from 8:00AM until 7:00PM. <u>Id.</u> ¶ 25.  Plaintiff Castro's pay rate was $12.50 per hour.  <u>Id.</u> ¶ 26.

Defendants employed Mr. Sanchez from on or about May 15, 2012 until on or about November 15, 2015.  <u>Id.</u> ¶ 27.  Mr. Sanchez was assigned various duties including, but not limited to, framing, sheet rocking, molding installations and general carpentry.  <u>Id.</u> ¶ 28. Plaintiff Sanchez worked Monday through Friday from 8:00AM until 7:00PM.  <u>Id.</u> ¶ 29. Plaintiff Sanchez's pay rate was $20.00 per hour.  <u>Id.</u> ¶ 30.

Plaintiffs regularly worked for the Defendants more than forty hours a week but did not receive any overtime premium of one-and-one-half times their regular rates of pay for those hours.  <u>Id.</u> ¶ 31.  They allege that did not receive the statutory minimum wage, were not paid for days they worked, and were not paid spread-of-hours pay.  <u>Id.</u> ¶¶ 31-34.  Plaintiffs allege that

they were not offered statements with the payments of wages or annual wage notices.  <u>Id.</u> ¶¶ 46-47.

Plaintiffs filed their Complaint, ECF No. 1, and filed returned executed summonses for each Defendant, all served at Gon Way's primary place of business in Flushing, New York, ECF Nos. 5-7.  Defendants did not answer or otherwise move.  The Clerk of Court entered default in this case against Defendants, ECF No. 9, and Plaintiffs filed this motion, ECF Nos. 12-14, which includes proof of its service on Defendants; the Summons; Complaint; the certificate of default; affidavits for each Plaintiff; an affidavit from their counsel, Amit Kumar; and charts setting forth the damages alleged for each Plaintiff for each alleged violation of the FLSA and NYLL.  ECF No. 14, Exhibits.  District Judge Ross referred the motion to the undersigned.  ECF No. 15.

## II.    ANALYSIS

### A.    Legal Standard

Fed. R. Civ. P. 55 establishes the procedure to obtain a default judgment.  <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993) (citing Fed. R. Civ. P. 55).  First, if a party failed to plead or otherwise defend against an action, the "clerk must enter the party's default." <u>See</u> Fed. R. Civ. P. 55(a).  "The entry of default is therefore not discretionary."  <u>Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC</u>, 779 F.3d 182, 186 (2d Cir. 2015).  Second, the moving party must apply to the court for a default judgment after the default has been entered, as Plaintiffs have done here.  <u>See</u> Fed. R. Civ. P. 55(b); <u>see also</u> ECF Nos. 12-14.  If the defaulting party still fails to appear or move to set aside the default pursuant to Fed. R. Civ. P. 55(c), the court may enter a default judgment.  <u>See</u> Fed. R. Civ. P. 55(b)(2).

The trial court has "sound discretion" to grant or deny a motion for default judgment. Enron Oil, 10 F.3d at 95. In light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. at 95-96 (recognizing "the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard").

A party's default constitutes a concession of all well-pleaded allegations of liability, except for those allegations relating to damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The court must conduct an inquiry sufficient to determine the amount of damages to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see Cement & Concrete Workers, 699 F.3d at 232. This inquiry may be accomplished by evaluating the detailed affidavits and documentary evidence submitted by the plaintiff or conducting an evidentiary hearing to evaluate the amount of damages to be awarded against a defaulting defendant. See Fed. R. Civ. P. 55(b)(2); see also Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court."); Cement & Concrete Workers, 699 F.3d at 234 (same).

### B. Proper Service Of Process

A court may not properly enter a default judgment unless it has jurisdiction over the parties against whom or which the judgment is sought. See Sajimi v. City of N.Y., No. 07 Civ. 3252 (ENV) (MDG), 2011 WL 135004, at *8 (E.D.N.Y. Jan. 13, 2011). Accordingly, that party must have been served with process.

Fed. R. Civ. P. 4(e)(1) provides that service may be effected in accordance with the service rules of the state where the district is located or service is made. With regard to Gon Way, New York Civil Practice and Law Rules ("N.Y.C.P.L.R.") state that "personal service upon 'any domestic [ ] corporation' may be made upon 'an officer, director, managing or general agent . . . or to any other agent authorized by appointment or by law to receive service.'" Cit Bank v. Dambra, No. 14 Civ. 3951 (SLT) (VMS), 2015 WL 7422348, at *3 (E.D.N.Y. Sept. 25, 2015), R&R adopted by CIT Bank, N.A. v. Dambra, No. 14 Civ. 3951 (SLT) (VMS), 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015) (citing N.Y.C.P.L.R. § 311(a)(1)). Plaintiffs' process server submitted an affidavit stating that she delivered a copy of the summons and Complaint on an individual who was a general agent of Gon Way. See ECF No. 7. Thus, Plaintiffs properly served Gon Way.

With regard to Defendants Wendell Lee and Sweeney Lee, CPLR § 308(2) allows for service of process

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other . . . .

N.Y.C.P.L.R. § 308(2). Here, Plaintiffs served Defendants Wendell Lee and Sweeney Lee with notice of this action by delivering the summons and Complaint to their place of business, Gon Way, at 33-21 Farrington Street, Flushing, New York 11354, and leaving the aforementioned documents with a woman of suitable age and discretion who described herself as a co-worker of

Wendell Lee and Sweeney Lee. See ECF Nos. 5-6. Thus, Plaintiffs properly served Wendell Lee and Sweeney Lee pursuant to N.Y.C.P.L.R. § 308(2).

Accordingly, the Court respectfully recommends finding that service was proper on all Defendants.

### C. Entry Of A Default Judgment Is Warranted

When determining whether to grant a default judgment, the Court is guided by the same criteria which apply to a motion to set aside an entry of a default. See Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001); Enron Oil, 10 F.3d at 96. These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the adversary; and (3) whether a meritorious defense is presented. See Enron Oil, 10 F.3d at 96.

With respect to the first factor, a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness. See S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998) (holding the defendant's non-appearance and failure to respond equated to willful conduct); see also Bds. of Trs. v. Frank Torrone & Sons, Inc., No. 12 Civ. 3363 (KAM) (VMS), 2014 WL 674098, at *4 (E.D.N.Y. Feb. 3, 2014). Here, Defendants have not responded to the Complaint despite proper service. See ECF Nos. 5-7. Plaintiffs also submitted an affidavit of service confirming that Defendants were provided notice of the motion for default judgment. See ECF Nos. 12 Ex. 1. Defendants have nonetheless failed to respond to Plaintiffs' motion for default judgment or otherwise appeared in this action. Accordingly, Defendants' failure to respond to the Complaint or the instant motion sufficiently demonstrates willfulness. See United States v. Ireland, No. 15 Civ. 3397 (JS) (AYS), 2016 WL 5376248, at *4 (E.D.N.Y. Aug. 8, 2016), R&R adopted by No. 15 Civ. 3397(JS) (AYS), 2016 WL 5372801 (E.D.N.Y. Sept. 26,

2016); <u>Traffic Sports USA v. Modelos Restaurante, Inc.</u>, No. 11 Civ. 1454 (ADS) (AKT), 2012 WL 3637585, at *2 (E.D.N.Y. Aug. 1, 2012), R&R <u>adopted by</u> 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012) (finding the defendant's failure to respond "in any way" to the Complaint, combined with the affidavits demonstrating proper service, confirmed beyond "any doubt" that the defendant's failure to respond was willful); <u>Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.</u>, 02 Civ. 9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (holding that the defendant's default was willful where he failed to respond in any way and failed to provide any explanation for such failure).

As to the second factor under consideration, denying this motion would be prejudicial to Plaintiffs insofar "'as there are no additional steps available to secure relief in this Court.'" <u>See Mahoney v. Amekk Corp.</u>, No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6585810, at *6 (E.D.N.Y. Sept. 30, 2016), R&R <u>adopted by</u> No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (quoting <u>Flanagan v. N. Star Concrete Constr., Inc.</u>, 13 Civ. 2300 (JS) (AKT), 2014 WL 4954615 (E.D.N.Y. Oct. 2, 2014) (ignoring the defendant's default would be prejudicial because the "[p]laintiff would be unable to recover for the claims adequately set forth in the [c]omplaint").

Third, Defendants cannot establish a meritorious defense since, by failing to appear in this action, they are unable to present any evidence regarding a defense. <u>See Joseph v. HDMJ Rest., Inc.</u>, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

Accordingly, the Court finds Defendants' failure to answer or otherwise respond to the Complaint in any way constitutes an admission of the factual allegations therein. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) ("Where . . . the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotations omitted).

Accordingly, the Court now proceeds to consider whether those facts establish Defendants' liability under federal and state law. For those claims as to which the Court recommends finding Defendants liable, damages are discussed in Section E, and the underlying calculations are set forth in Appendix I.

### D.    Liability

#### 1.    Plaintiff Qualifies For the FLSA's And The NYLL's Protections As An Employee Of Defendants

##### i.    Plaintiffs Qualify For The FLSA Protections

In order to establish a claim under the FLSA for minimum wage or overtime compensation, a plaintiff must demonstrate that: (1) he is an "employee" of the defendant; and (2) the defendant is an "enterprise engaged in commerce" during the relevant period. See 29 U.S.C. §§ 206(a), 207(a); see Chen v. Major League Baseball, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014).

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Here, Plaintiffs qualify as employees under the FLSA insofar as Plaintiffs' Complaint alleges that Defendants employed Plaintiffs within this statutory meaning, see Garcia v. Badyna, No. 13 Civ. 4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) (noting that, as the plaintiff alleged in the complaint that he was an employee, "[i]t follows . . .

that for purposes of this default, [the plaintiff] qualifies as an 'employee' under the FLSA"); see also Compl., ECF No. 1 ¶¶ 19, 23 & 27, and Plaintiffs allege specific work performed for Defendants, see id. ¶¶ 20, 24 & 28.

Second, Plaintiffs have demonstrated that Gon Way is an "enterprise engaged in commerce." See 29 U.S.C. § 203(s)(1)(A). The FLSA delineates an enterprise as one with "employees engaged in commerce . . . [or] handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and an "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Here, Plaintiffs allege in the Complaint that the annual gross volume of sales of Gon Way exceeded $500,000, see Compl., ECF No. 1 ¶¶ 1-12; that Gon Way was "engaged in an industry having an affect [sic] on commerce," id. ¶ 15; and that "Plaintiffs regularly handled products which had been moved in commerce," see id. ¶16. Although the Complaint does not specify what products moved through interstate commerce, the allegations are sufficient for the purposes of the FLSA as it is likely that at least some of the materials required to operate a construction company originated from outside of New York.[2] See Wing Kwong Ho v. Target Const. of NY, Corp., No. 08 Civ. 4750 (KAM) (RER), 2011 WL 1131510, at *8 (E.D.N.Y. Mar. 28, 2011) (holding that a construction company would require tools that moved through interstate commerce); see also, e.g., Huerta v. Victoria Bakery, No. 10 Civ. 4754 (RJD) (JO), 2012 WL 1107655, at *1 (E.D.N.Y. Mar. 30, 2012) (finding it was "inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that

---

[2] Plaintiffs' Complaint is extremely thin on facts related to Plaintiffs' actual work or their working conditions. As to the interstate-commerce and minimum-revenue elements, Plaintiffs have simply quoted the statute and interpreting case law without particularized facts. The preferred practice would be to provide specific facts as to each element of each Plaintiff's claim.

the bakery did not sell its products outside the State of New York"); <u>Maribel Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F. Supp. 2d 114, 118, 121 (E.D.N.Y. 2011) (finding it was "logical to infer . . . that the cleaning supplies utilized by [janitors] originated outside of New York.").

Accordingly, the Court respectfully recommends finding that Plaintiffs qualify for protection under the FLSA.

### ii.        Plaintiffs Qualify For NYLL Protections

To prevail on a claim under the NYLL, Plaintiffs must prove that they were "employees" and that Defendants were "employers," as defined by the statute. <u>See</u> <u>Lauria v. Heffernan</u>, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009). The NYLL defines an employee as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2), and an employer is described as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service," N.Y. Lab. Law § 190(3). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." <u>Garcia</u>, 2014 WL 4728287, at *5.

"[T]he critical inquiry in determining whether this employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." <u>Meyer v. United States Tennis Ass'n</u>, 607 Fed. Appx. 121, 122 (2d Cir. 2015) (citing <u>Bynog v. Cipriani Grp., Inc.</u>, 802 N.E.2d 1090, 1092-93 (2003)); <u>see</u> <u>Velu v. Velocity Express, Inc.</u>, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009). The factors relevant to this assessment of control include whether the worker: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." <u>Bynog</u>, 802 N.E.2d at 1093.

Regarding the first factor, Plaintiffs did not work at their own convenience insofar as they had to arrive at Gon Way at a specific hour to begin their shifts; they ended their shifts at a specific hour; and Defendants Wendell Lee and Sweeney Lee controlled their work schedules. See Compl., ECF No. 47 ¶¶ 21, 25, 29 & 38; Mahoney v. Amekk Corp., 2016 WL 6585810, at *7 (finding plaintiff was protected under the FLSA when she did not work at her own convenience, she ended her shifts at a specific hour, and she was not permitted any lunch or rest breaks); cf. Sellers v. Royal Bank of Canada, No. 12 Civ. 1577 (KBF), 2014 WL 104682, at *3 (S.D.N.Y. Jan. 8, 2014) (finding the plaintiff worked at his own convenience because he could arrive and leave work whenever he pleased and take breaks at his pleasure).

The second and third factors are neutral as Plaintiffs' Complaint is silent regarding whether Plaintiffs were restricted from engaging in other employment.

The fourth factor arguably favors Defendants insofar as Plaintiffs were paid "off the books." See Compl., ECF No. 1 ¶¶ 44, 46-7. This "factor[], in context, merit[s] modest weight." Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 925 (S.D.N.Y. 2013) ("To assign [the fourth factor] much weight would effectively allow any employer to control, under New York law, a worker's status simply by labeling her an independent contractor . . . ."). To allow Defendants to derive a benefit for flouting federal and state wage reporting and tax laws would undermine the very wage laws which were enacted to protect employees.

With regard to the fifth factor, the Complaint states that Plaintiffs were on fixed schedules. See Compl., ECF No. 1 ¶¶ 21, 25, 29.

It is also noteworthy that, as of 2014, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." See Hart, 967 F. Supp. 2d at 924; see also Topo v. Dhir, No. 01 Civ. 10881 (PKC), 2004 U.S.

Dist. LEXIS 4134, at *3 (S.D.N.Y. Mar. 16, 2004) ("There is general support for giving FLSA and the New York Labor Law consistent interpretations.").  Considering the five relevant factors, see Bynog, 802 N.E.2d at 1093, under the circumstances, and in view of the overarching issue of the degree of control exercised by Defendants, the Court recommends finding that Plaintiffs qualify as employees under the NYLL.

### iii. Wendell Lee And Sweeney Lee Were Plaintiffs' Employers Under The FLSA And The NYLL

Next, the Court considers Defendants Wendell Lee and Sweeney Lee's liability under the FLSA and the NYLL.

In Carter v. Dutchess Community College, 735 F.2d 12 (2d Cir. 1984), the Second Circuit outlined a multi-factor test to determine the "economic reality" of an "employment relationship" between an individual defendant and an FLSA-plaintiff.  See Carter, 735 F.2d at 12; see also Irizarry v. Catsimatidis, 722 F.3d 99, 103-05 (2d Cir. 2013) (describing the Carter factors in determining an individual defendant's liability for an FLSA violation).  The factors relevant to this assessment include "whether the alleged employer:  (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records."  See Irizarry, 722 F.3d at 103-05.  "No one of these factors is dispositive, nor were they, as a whole, exclusive."  Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 142-43 (2d Cir. 2008) (describing the employer-employee relationship analysis where distinguishing between independent contractors and employees) (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)).  The Second Circuit has emphasized that this analysis must be determined on "a case-by-case basis" and "by review of the totality of the circumstances." Barfield, 537 F.3d at 141-42 (citing Carter, 735 F.2d at 12 n.1).

Here, Plaintiffs alleges that Defendants Wendell Lee and Sweeney Lee: (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules and conditions of employment; and (3) determined the rate and method of employee's payment, see Compl., ECF No. 1 ¶¶ 35-39, thus establishing three of the Carter factors. The fourth factor, regarding employment records, is unsatisfied as Plaintiffs allege that employment records were not kept at all, or alternatively were never provided to Plaintiffs. See id. ¶¶ 44-47. This does not undermine the "economic reality" that Wendell Lee and Sweeney Lee controlled all tasks related to Plaintiffs' employment, as failing to keep employment records is itself a violation of the FLSA and NYLL, a violation the Plaintiffs include in their Complaint. See id. ¶¶ 60-65; see also Herman v. RSR Sec. Servs., 172 F.3d 132, 140 (2d Cir. 1999) ("But that this fourth factor is not met is not dispositive.") (citation omitted).

As three of the four Carter factors are satisfied, the Court respectfully recommends finding that Wendell Lee and Sweeney Lee may be considered Plaintiffs' employers and should be held individually liable for any FLSA violations. See Ling Nan Zheng v. Liberty Apparel Co., 355 F.3d 61, 71 (2d Cir. 2003) ("[The individual defendant] jointly employed the company's employees where the [the individual defendant] exercised three of the four employer prerogatives identified in Carter.") (citing Herman, 172 F.3d at 139); Irizarry, 722 F.3d at 109 (holding that to be an employer under the FLSA, an individual defendant must possess control over the company's operations in manner that relates to plaintiff's employment); Teri v. Spinelli, 980 F. Supp. 2d 366, 376 (E.D.N.Y. 2013) ("[T]he Court concludes that no reasonable jury considering the 'economic realities' of the [parties'] relationship could find that [the individual defendant] was not [the p]laintiffs' joint employer under the FLSA . . . .").

In light of the Court's finding that Wendell Lee and Sweeney Lee were Plaintiffs' employers for the purposes of FLSA liability, I respectfully recommend that the Court find that they were Plaintiffs' employer for the purposes of NYLL liability as well.  See Mahoney v. Amekk Corp., No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), R&R adopted by No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (citing Apple v. Atlantic Yards Dev. Co., LLC, No. 11 Civ. 5550 (JG) (JMA), 2012 WL 2309028, at *7 n.6 (E.D.N.Y. Oct. 27, 2014)) (concluding that the defendants were not the plaintiffs' employers under the FLSA or the NYLL using the Carter analysis and stating that the NYLL was not addressed separately because its definitions were nearly identical to the FLSA's); Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011) ("Courts have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA."); Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) ("The economic reality test will be used to determine whether [the individual defendant] is [the plaintiff's] employer as defined under both state and federal law, as there is general support for giving [the] FLSA and the [NYLL] consistent interpretations.") (citation omitted).

### iv.  Defendants Are Joint And Severally Liable

As the Court finds that Gon Way, Wendell Lee and Sweeney Lee were jointly Plaintiffs' employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiffs' favor.  See Hernandez v. Larry Miller Roofing, Inc., 628 F. App'x 281, 285 (5th Cir. 2016), as revised (Jan. 6, 2016); Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 148 (3d Cir. 2014); Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 47 (1st Cir. 2013); Mahoney, 2016 WL 6585810, at *9, R&R adopted by 2016 WL 6601445 (citing Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011)) (finding allegations

that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and a NYLL employer, and to impose joint and several liability with corporate defendant for wage law violations); Armata v. Unique Cleaning Servs., LLC, No. 13 Civ. 3625 (DLI) (RER), 2015 WL 12645527, at *4 (E.D.N.Y. Aug. 27, 2015); Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.") (collecting cases); Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) (same).

**v.        Statute Of Limitations:  Timeliness Of The FLSA And NYLL Claims**

The relevant statutes of limitations are two years under the FLSA, see 29 U.S.C. § 255(a), and six years under the NYLL, see NYLL § 663(3).  If an employer's violations are deemed "willful," the statute of limitations for the FLSA increases to three years.  See 29 U.S.C. § 255(a).  By virtue of Defendants' default, combined with Plaintiffs' allegations that Defendants "willfully" violated the FLSA, see Compl., ECF No. 1 ¶¶ 49-50, 52-53, 55, 59, 61, the three-year statute of limitations applies to Plaintiffs' FLSA claims.  See Rodriguez v. Queens Convenience Deli Corp., No. 09 Civ. 1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) ("When a defendant defaults, the violation is considered 'willful' and the three[-]year statute of limitations applies.").  Accordingly, the three-year statute of limitations applies to Plaintiffs' FLSA claims, and the six-year statute of limitations applies to their NYLL claims.

Plaintiffs filed their Complaint on March 22, 2016.  See ECF No. 1.  Therefore, Plaintiffs may recover damages arising out of their employment going back six years under state law, or March 22, 2010, and three years under federal law, or March 22, 2013.  Plaintiff Luna alleges

that Defendants employed him from on or about June 1, 2011 until on or about August 31, 2015. See id. ¶ 19. He can recover under the NYLL for the entire duration of his employment, and under the FLSA from March 22, 2013 on. Plaintiff Sanchez was employed by Defendants from May 15, 2012 until November 15, 2015. See id. ¶ 27. He can recover under the NYLL for the entire duration of his employment, and under the FLSA from March 22, 2013 on. Defendants employed Plaintiff Castro from June 1, 2013 until October 31, 2015. See id. ¶ 23. He can recover under the NYLL and FLSA for the entire duration of his employment.

### E. Defendants' Liability Under The FLSA And The NYLL

#### 1. Defendants Paid Plaintiffs The Statutory Minimum Wage Under The FLSA And NYLL

Both federal and New York state laws mandate employers pay their employees a minimum wage for the first 40 hours that employees work each week. See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1). For all times relevant to this litigation, Defendants were required to pay Plaintiffs the federal minimum hourly wage of $7.25. See 29 U.S.C. § 206(a)(1)(C) (mandating a minimum wage of $7.25 an hour as of July 24, 2009). New York State minimum wage, however, required a higher hourly minimum wage. Specifically, Defendants were obligated to pay Plaintiffs a minimum hourly wage of $7.25 prior to December 31, 2013 and $8.00 thereafter.[3] See N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2.

Here, Plaintiffs each allege that Defendants violated the minimum-wage provisions of both the FLSA and NYLL in their Complaint, see Compl., ECF No. 1 ¶¶ 33, 48-50, 54-55, and in their motion for default, Mem. of Law in Supp. of Mot. For Default, ECF No. 13 at 4. In both

---

[3] See https://www.labor.ny.gov/stats/minimum_wage.asp (setting a minimum wage of $7.25 from July 24, 2009 through December 30, 2013, and $8.00 from December 31, 2013 through December 31, 2015) (last visited January 26, 2017).

the Complaint and affidavits submitted in support of the motion for default, Plaintiffs' stated wages are well above the minimum wage. See Compl., ECF No. 1 ¶¶ 22 ("Plaintiff Luna's pay rate was $25.00 per hour."), 26 ("Plaintiff Castro's pay rate was $12.50 per hour."), 30 ("Plaintiff Sanchez's pay rate was $20.00 per hour."); Aff. of Freddy Luna, ECF No. 14, Ex. 6 ¶ 13 ("I was paid $25.00 per hour, for each hour that I worked."); Aff. of Rafael Castro, ECF No. 14, Ex. 8 ¶ 13 ("I was paid $12.50 per hour, for each hour that I worked."); Aff. of Fidel Sanchez, ECF No. 14, Ex. 10 ¶ 13 ("I was paid $20.00 per hour, for each hour that I worked."). The Court respectfully recommends finding that Defendants are not liable for minimum-wage violations of the FLSA or NYLL.

> **2.** **Defendants Are Liable For Failing To Pay Plaintiffs Their Wages As Required By The FLSA And The NYLL**

Plaintiffs allege that they were not paid for hours of work they completed. See Compl., ECF No. 1 ¶ 32. "Pursuant to section 191(a) of the NYLL, manual workers like plaintiffs must 'be paid weekly and not later than seven calendar days after the week in which the wages are earned . . . .'" Chen v. JP Standard Constr. Corp., No. 14 Civ. 1086 (MKB) (RLM), 2016 WL 2909966, at *8 (E.D.N.Y. Mar. 18, 2016) (quoting N.Y. Lab. Law § 191(a)(i)), R&R adopted by No. 14 Civ. 1086 (MKB) (RLM), 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

Both federal and New York State law require employers to "make, keep, and preserve" records of employee wages, hours and employment conditions. See 29 U.S.C. § 211(c); 12 N.Y.C.R.R. § 142-2.6; Pineda, 831 F. Supp. 2d at 674 (citing the federal and state statutes). If an employer fails to produce these requisite records, the plaintiff may satisfy his or her burden of proving hours worked by relying solely on their recollection. See Daniels v. 1710 Realty LLC, 497 F. App'x 137, 139 (2d Cir. 2012) (citing Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011)); Choudry v. Durrani, No. 14 Civ. 4562 (SIL), 2016 WL 6651319, at *9

(E.D.N.Y. Nov. 10, 2016) (citing Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011)); Mahoney, 2016 WL 6585810, at *10, R&R adopted by 2016 WL 6601445; Khan v. Party Pizza Inc., No. 15 Civ. 3470 (ARR) (RML), 2016 WL 4597479, at *2 (E.D.N.Y. Aug. 16, 2016), R&R adopted by No. 15 Civ. 3470 (ARR) (RML), 2016 WL 4596001 (E.D.N.Y. Sept. 2, 2016).  Where, as here, a defendant employer defaults, a plaintiff's recollection and estimates of hours worked are presumed to be correct.  See Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003); Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002), rev'd on other grounds, Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006), as amended (Oct. 3, 2006); Pavia v. Around the Clock Grocery, Inc., No. 03 Civ. 6465 (ERK), 2005 WL 4655383, at *5 (E.D.N.Y. Nov. 15, 2005) (finding a plaintiff's testimony to be sufficient to establish unpaid wages).  Nonetheless, a plaintiff's approximations and estimates must reasonable and appropriate.  See Jemine v. Dennis, 901 F. Supp. 2d 365, 376-79 (E.D.N.Y. 2012).

Plaintiff Luna alleges that he was not paid for his final 9 days of work, Aff. of Freddy Luna, ECF No. 14, Ex. 6 ¶ 16; Plaintiff Castro alleges that was not paid for 76 full days of work; Aff. of Rafael Castro, ECF No. 14, Ex. 8 ¶ 16; and Plaintiff Sanchez says he was not paid for 49 days of work, Aff. of Fidel Sanchez, ECF No. 14, Ex. 10 ¶ 16.  As more than seven days have passed since the week in which Plaintiffs earned these wages, they are recoverable under the NYLL.  The Court respectfully recommends finding Defendants liable for their failure to pay Plaintiffs' wages for these claimed days.

### 3. Defendants Are Liable For Failing To Pay Plaintiffs Their Overtime Premium As Required By The FLSA And The NYLL

Federal and state law require that employers pay employees "one and one-half times" their "regular rate" for any hours worked in excess of forty hours in a given week.  29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 146-1.4.  The employee's overtime rate is calculated using the statutory

minimum wage where the employee's "regular" hourly rate falls below the required minimum

wage. See Pineda-Herrera v. Da-Ar-Da, Inc., No. 09 Civ. 5140 (RLM), 2011 WL 2133825, at

*3 (E.D.N.Y. May 26, 2011). Federal and state law require that employers pay employees "one

and one-half times" their "regular rate" for any hours worked in excess of forty hours in a given

week. 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 146-1.4. The employee's overtime rate is calculated

using the statutory minimum wage where the employee's "regular" hourly rate falls below the

required minimum wage. See Pineda-Herrera, 2011 WL 2133825, at *3.

The Second Circuit recently clarified in a trio of cases that "the degree of specificity" that

a plaintiff must meet in order to "make a Section 207(a)(1) FLSA overtime claim." Lundy v.

Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013); see Dejesus v. HF

Mgmt. Servs., LLC, 726 F.3d 85, 88-89 (2d Cir. 2013); Nakahata v. New York-Presbyterian

Healthcare Sys., Inc., 723 F.3d 192, 200-201 (2d Cir. 2013). Specifically, a plaintiff must

provide "sufficient detail about the length and frequency" of unpaid work in order to support "a

reasonable inference" that he or she "worked more than forty hours in a given week." See

Nakahata, 723 F.3d at 201; see Lundy, 711 F.3d at 114 ("[I]n order state a plausible FLSA

overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well

as some uncompensated time in excess of the 40 hours."). Although it is not necessary to

actually estimate the number of hours a plaintiff worked in "some or all workweeks," "some

factual context" is necessary in order to "nudge [an FLSA plaintiff's] claim 'from conceivable to

plausible.'" DeJesus, 726 F.3d 85 at 88-90 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). The plaintiff's burden, as described by these three cases, likewise applies in the

context of the NYLL overtime compensation claim. See 12 N.Y.C.R.R. § 142-2.2 (stating an

employer shall pay an employee for overtime "in the manner and methods provided in and

subject to the exemptions of [the FLSA]"); see Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 357 (E.D.N.Y. 2014) ("[T]he NYLL adopts th[e] same standard . . . [as the] FLSA definition of overtime into the [NYLL]." (quoting Nakahata, 723 F.3d at 200)).

Here, Plaintiffs claim that Defendants failed to pay them the overtime premium for the entirety of their employment, thereby violating both the FLSA and NYLL.[4] See Compl., ECF No. 1 ¶¶ 31 ("Plaintiffs regularly worked for the Defendants in excess of forty (40) hours a week but did not receive any overtime premium of one and one half times their regular rates of pay for those hours."), 51-53, 56-57; Aff. of Freddy Luna, ECF No. 14, Ex. 6 ¶ 14; Aff. of Rafael Castro, ECF No. 14, Ex. 8 ¶ 4; Aff. of Fidel Sanchez, ECF No. 14, Ex. 10 ¶ 4.  In contrast to Lundy, Nakahata and DeJesus, in which the Second Circuit dismissed FLSA-based overtime claims as speculative and insufficiently detailed, Plaintiffs provide the Court with specific information regarding the overtime hours they worked.  Plaintiffs all allege that they regularly worked 55 hours per week throughout the course of their employment.  See id.; Tackie v. Keff Enterps. LLC, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (finding the FLSA plaintiff adequately alleged an overtime claim where "she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week").  Plaintiffs' allegations demonstrate their overtime claim without the need for any inference because Plaintiffs' set schedules exceeded forty hours per workweek.

In light of the foregoing, it is respectfully recommended that the District Judge find Defendants liable to Plaintiffs for failing to pay them an overtime premium pursuant to the FLSA and the NYLL.

---

[4] Plaintiffs' submissions do not suggest they were not paid for the hours they worked each week above 40 hours, only that they were not paid the time-and-a-half overtime premium for those hours.  See Compl., ECF No. 1 ¶ 31.

### 4. Defendants Are Not Liable For Failing To Pay Plaintiff Spread-Of-Hours Pay As Required By The NYLL

Certain employees are entitled under New York law to a "spread-of-hours" premium for each workday worked in excess of ten hours.[5]  See 12 N.Y.C.R.R. § 142-2.4; N.Y. Lab. Law § 650 et seq.  Specifically, for any workday that lasts longer than ten hours, employees are entitled to receive "one additional hour of pay at the basic minimum hourly rate."  12 N.Y.C.R.R. § 146-1.6(a).  A limitation upon a plaintiff's eligibility to recover for spread-of-hours pay is that the plaintiff not earn more than the minimum wage.  See Guadalupe v. Tri-State Emp't Mgmt. & Consulting, Inc., No. 10 Civ. 3840 (NG) (CLP), 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013) (citing to New York State Department of Labor opinion letters stating this prerequisite).[6]

---

[5] There is no spread-of-hours claim counterpart under the FLSA.

[6] One of the first cases to consider this question had concerns with the New York State Department of Labor's position and held that the Plaintiffs may recover spread-of-hours pay even if they earn more than the minimum wage.  See Yang v. ABCL Corp., 427 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2005).

Numerous cases since Yang have disagreed with both its holding and with the court's failure to defer to the Department of Labor's opinion letter.  See Mahoney, 2016 WL 6585810, at *12, R&R adopted by 2016 WL 6601445; Li, 2016 WL 5369489, at *15, R&R adopted as modified by 2016 WL 5349770; Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 473 (E.D.N.Y. 2011); Rui Xiang Huang v. J & A Entm't, Inc., No. 09 Civ. 5587 (ARR) (VVP), 2012 WL 6863918, at *8 (E.D.N.Y. Dec. 3, 2012) (noting that "[t]he majority of district courts in this circuit are in accord with the New York Department of Labor's position that those earning more than the minimum wage are not entitled to spread of hours pay"), R&R adopted by No. 09 Civ. 5587 (AR) (VVP), 2013 WL 173738 (Jan. 16, 2013); Ellis v. Common Wealth Worldwide Chauffeured Transp. of NY, LLC, No. 10 Civ. 1741 (DLI) (JO), 2012 WL 1004848, at *7-8 (E.D.N.Y. March 23, 2012) (citing cases); Almeida v. Aguinaga, 500 F. Supp. 2d 366, 370 (S.D.N.Y. 2007) (stating that "the spread-of-hours provision is properly limited to enhancing the compensation of those receiving only the minimum required by law"); Jenkins v. Hanac, Inc., 493 F. Supp. 2d 556, 558 (E.D.N.Y. 2007) (noting that Section 142–2.4 "'does not ensure additional compensation to employees whose wages sufficiently exceed [the minimum wage] floor'") (citation omitted); Seenaraine v. Securitas Sec. Servs. USA, Inc., 37 A.D.3d 700, 701-02, 830 N.Y.S.2d 728, 729 (2d Dep't 2007) ("[T]he Department of Labor's interpretation of the regulation is neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the

Here, Plaintiffs all allege that Defendants violated the spread-of-hours pay provision of the NYLL, see Compl., ECF No. 1 ¶¶ 34, 58-59, and in their motion for default, Mem. of Law in Supp. of Mot. for Default, ECF No. 13 at 4-5. In both the Complaint and affidavits submitted in support of the motion for default, Plaintiffs' wages are well above the minimum wage. See Compl., ECF No. 1 ¶¶ 22 ("Plaintiff Luna's pay rate was $25.00 per hour."), 26 ("Plaintiff Castro's pay rate was $12.50 per hour."), 30 ("Plaintiff Sanchez's pay rate was $20.00 per hour."); Aff. of Freddy Luna, ECF No. 14, Ex. 6 ¶ 13 ("I was paid $25.00 per hour, for each hour that I worked."); Aff. of Rafael Castro, ECF No. 14, Ex. 8 ¶ 13 ("I was paid $12.50 per hour, for each hour that I worked."); Aff. of Fidel Sanchez, ECF No. 14, Ex. 10 ¶ 13 ("I was paid $20.00 per hour, for each hour that I worked."). The Court respectfully recommends finding that Defendants are not liable for any spread-of-hours violations of the NYLL.

**F.        Damages**

As noted above, the damages calculations are set forth in detail in Appendix I.

### 1.        The Law Relevant To Plaintiffs' Damages Calculations

#### i.        Defendants' Failing To Pay Wages

Defendants are liable to Plaintiffs for unpaid wages for hours of work Plaintiffs completed. See Chen v. JP Standard Constr. Corp., No. 14 Civ. 1086 (MKB) (RLM), 2016 WL 2909966, at *8 (E.D.N.Y. Mar. 18, 2016) (citing N.Y. Lab. Law § 191(a)(i)), R&R adopted by No. 14 Civ. 1086 (MKB) (RLM), 2016 WL 2758272 (E.D.N.Y. May 12, 2016). The overtime premium for these weeks of work is calculated separately in Section II.F.2.ii.

---

promulgated language . . . Accordingly, the plaintiff was not owed spread-of-hours compensation under the regulation.")

Plaintiff Luna alleges that he was not paid for his final 9 days of work, Aff. of Freddy Luna, ECF No. 14, Ex. 6 ¶ 16, which at $25.00 an hour for 11-hour days equals $2,457.00 in unpaid wages. Plaintiff Castro alleges that was not paid for 76 full days of work; Aff. of Rafael Castro, ECF No. 14, Ex. 8 ¶ 16; which at $12.50 an hour for 11-hour days equals $10,450.00. Plaintiff Sanchez says he was not paid for 49 days of work, Aff. of Fidel Sanchez, ECF No. 14, Ex. 10 ¶ 16, which at $20.00 an hour for 11-hour days equals $10,780.00. Therefore, the Court respectfully recommends that the District Judge find Defendants liable to Plaintiff Luna for unpaid wages in the amount of $2,457.00; to Plaintiff Castro for $10,450.00; and to Plaintiff Sanchez for $10,780.00.

## ii.     Overtime Pay Violations

Defendants are liable for failing to pay Plaintiffs their overtime pay premium. Each Plaintiff worked for 55 hours a week, so each is owed the time-and-a-half premium for 15 hours of work for every week that he worked for Defendants.

Plaintiff Luna was paid $25.00 an hour, with an overtime rate of $37.50, so he is entitled to a $12.50 premium for every hour he worked above 40 each week. With 15 overtime hours a week, this premium amounts to $187.50 in overtime premium owed per week. He worked for Defendants for 221 weeks, so he is owed $41,437.50 in overtime premiums.

Plaintiff Castro was paid $12.50 an hour, with an overtime rate of $18.75, so he is entitled to a $6.25 premium for every hour he worked above 40 each week. With 15 overtime hours a week, this premium amounts to $93.75 in overtime premium owed per week. He worked for Defendants for 126 weeks, so he is owed $11,812.50 in overtime premiums.

Plaintiff Sanchez was paid $20.00 an hour, with an overtime rate of $30.00, so he is entitled to a $10.00 premium for every hour he worked above 40 each week. With 15 overtime

hours a week, this premium amounts to $150.00 in overtime premium owed per week. He

worked for Defendants for 182 weeks, so he is owed $27,300.00 in overtime premiums.

The Court thus respectfully recommends that the District Judge find Defendant liable for

overtime premiums in the amount of $41,437.50 for Plaintiff Luna; $11,812.50 for Plaintiff

Castro; and $27,300.00 for Plaintiff Sanchez.

### iii. Wage Notice and Statement Violations

Plaintiffs seek to recover damages for Defendants' failure to provide regular and accurate

wage statements and annual wage notices as required by New York's Wage Theft Prevention Act

("WTPA"). Compl., ECF No. 1 ¶¶ 63-65. The WTPA, which became effective on April 9,

2011, requires every employer to

> furnish each employee with a statement with every payment of wages,
> listing the following: the dates of work covered by that payment of wages;
> name of employee; name of employer; address and phone number of
> employer; rate or rates of pay and basis thereof, whether paid by the hour,
> shift, day, week, salary, piece, commission, or other; gross wages;
> deductions; allowances, if any, claimed as part of the minimum wage; and
> net wages. . . . [T]he statement shall include the regular hourly rate or rates
> of pay; the overtime rate or rates of pay; the number of regular hours
> worked, and the number of overtime hours worked.

N.Y. Lab. Law § 195(3).

Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages

for violations of the wage statement requirement of $100 per work week, not to exceed $2,500.

See Baltierra v. Advantage Pest Control Co., No. 14 Civ. 5917 (AJP), 2015 WL 5474093, at *10

(S.D.N.Y. Sept. 18, 2015). On and after February 27, 2015, the WTPA entitles Plaintiffs to

$250 for each work day that the violation occurred, not to exceed $5,000. See N.Y. Lab. Law §

198(1-d); see Baltierra, 2015 WL 5474093, at *10.

As each Plaintiff worked at least 20 days after February 27, 2015, each meets and would exceed the $5,000 cap for wage statement violations. Accordingly, it is respectfully recommended that each Plaintiff be awarded $5,000 for this violation.

Plaintiffs also asserts that they each were not provided with a wage notice at the time of hiring. Compl., ECF No. 1 ¶¶ 60-62. The WTPA requires that at the time of hiring, employers furnish each employee

> in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

N.Y. Lab. Law § 195(1)(a).

Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for wage-notice violations of $50 per work week, not to exceed $2,500. See Baltierra, 2015 WL 5474093, at *111. On and after February 27, 2015, the WTPA entitles plaintiff for $50 for each workday that the violation occurred, not to exceed $5,000. N.Y. Lab. Law § 198(1-b).

As Plaintiffs each worked more than 100 days from February 27, 2015 through the conclusion of their work with Defendants, each reached the $5,000 cap for wage-notice violations, so it is respectfully recommended that each Plaintiff be awarded $5,000 for this violation.

In light of the foregoing, the Court respectfully recommends that the District Judge find Defendants liable to Plaintiffs for failing to provide them with written notice of pay, deductions, allowances and overtime rate of pay as required by the NYLL §§ 195(1)(a) and 195(3), and award each Plaintiff the $5,000 for both violations, equaling $10,000 for each of the three Plaintiffs, for a total of $30,000.

### iv.    Liquidated Damages

Plaintiff seeks liquidated damages under the FLSA and NYLL.  See Compl., ECF No. 1 ¶ 70.

Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages.  Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 216(b)); 29 U.S.C. § 216(b) ("Any employer who violates [the unpaid wage or overtime provisions of the FLSA] shall be liable . . . in the amount of . . . their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").  The FLSA affords the court "sound discretion" to award such damages where the employer demonstrates that he acted in "good faith" and with "reasonable grounds for believing that his act or omission" did not violate the FLSA.  See 29 U.S.C. § 260 ("[I]f the employer shows [the violation] . . . was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages.").  The Second Circuit has "characterized the employer's burden as 'a difficult one,' emphasizing that "double damages [are] the norm and single damages the exception."  Barfield, 537 F.3d at 150 (citing Herman, 172 F.3d at 142).

The NYLL mirrors the FLSA and similarly permits employees to recover "an additional amount as liquidated damages equal to 100 percent of the total amount of the wages found to be due . . . unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a); see N.Y. Lab. Law § 663(1); Chenensky v. N.Y. Life Ins. Co., No. 07 Civ. 11504 (WHP), 2012 WL 234374, at *4 (S.D.N.Y. Jan. 10, 2012); N.Y. Lab. Law § 663(1); Easterly v. Tri-Star Transp. Corp., No. 11 Civ. 6365 (VB) (PED), 2015 WL 337565, at *15 (S.D.N.Y. Nov. 19, 2014); Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1, 10 n.8 (N.Y. 2012). Thus, both the FSLA and NYLL: (1) provide for liquidated damages equal to 100% of the total unpaid compensation found due; and (2) place the burden of avoiding liability on the defendant.

Until recently, courts were split as to whether plaintiffs were entitled to liquidated damages under both statutes for the same violations. The Second Circuit answered that question in the negative in Chowdhury v. Hamza Express Food Corp., —— Fed. App'x ——, 2016 WL 7131854 (2d Cir. Dec. 7, 2016) (summary disposition). The panel held that the New York State Legislature's recent amendments to the liquidated damages provision of the NYLL—one effective in November 2009, the other in April 2011, see 2009 N.Y. Sess. Laws ch. 372, amending NYLL §§ 198(1-a), 663(1); 2010 N.Y. Sess. Laws ch. 564, amending NYLL §§ 198(1-a), 663(1)—show an intention "to conform [the state law provision] as closely as possible to the FLSA's liquidated damages provision." Chowdhury, —— Fed.Appx. at ——, 2016 WL 7131854, at *2. "[W]hatever reasons existed to award liquidated damages under the relevant provisions of both the FLSA and the NYLL before 2010, . . . the subsequent amendments to the

NYLL . . . hav[e] eliminated those reasons."[7]  Id.  Chowdhury is a non-precedential panel opinion, but it does provide some guidance.  See Koehler v. Metropolitan Transportation Authority, —— F. Supp. 3d ——, ——, 2016 WL 6068810, at *3 (E.D.N.Y. 2016); United States v. Tejeda, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) (holding that a district court is ill-advised "to flout germane guidance of a Circuit Court panel and to substitute its own conclusion of law"); Mendez v. Starwood Hotels & Resorts Worldwide, Inc., 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) ("[A] summary order has no precedential effect on any court, although it has to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion."); cf. United States v. Payne, 591 F.3d 46, 58 (2d Cir. 2010) ("Denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.").

It is the better practice to not allow for recovery under both statutes for the same violation.  See Mahoney, 2016 WL 6585810, at *14, R&R adopted by 2016 WL 6601445 (explaining reasoning).  This Court therefore respectfully recommends following Chowdhury and disallowing "stacked" liquidated damages for unpaid wages.

Where "stacked" liquidated damages are not permitted, Plaintiffs should "recover under the statute that provides the great[er] relief."  Castillo v. RV Transport, Inc., No. 15 Civ. 527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. April 11, 2016).

Here, Defendants have not answered or responded at all to this action, much less demonstrated a "good faith" basis for believing the "underpayment" of overtime wage rates was

---

[7] Presumably, when Chowdhury refers to the "relevant provisions of . . . the NYLL before 2010," Chowdhury, —— Fed. App'x at ——, 2016 WL 7131854, at *2, is the Court of Appeals was considering the amendment passed by the state legislature in 2010, which was not effective until April 9, 2011.  See 2010 N.Y. Sess. Laws ch. 564.

lawful, as both the FLSA and the NYLL require in order to prevent the imposition of liquidated damages. By contrast, Plaintiffs have alleged that Defendants' FLSA and NYLL violations were willful. See Compl., ECF No. 1 ¶¶ 49, 50, 53, 55, 59, 61, 62.

As such, it is respectfully recommended that the District Court find that Plaintiffs are permitted to recover liquidated damages for unpaid wages and unpaid overtime under the greater of the FLSA or NYLL.

### v. Pre-judgment Interest[8] Under The NYLL

Although it is "well settled" that pre-judgment interest is not awardable under the FLSA, Begum v. Ariba Disc., Inc., No. 12 Civ. 6620 (DLC), 2015 WL 223780, at *6-7 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest," Fermin, 93 F. Supp. 3d at 38. Under the CPLR, "[i]nterest shall be at the rate of nine per centum per annum." N.Y.C.P.L.R. § 5004. Courts ordinarily apply a statutory interest rate of nine percent per annum computed on a simple interest basis interest from "the earliest ascertainable date the cause of action existed." N.Y.C.P.L.R §§ 5001(b); 5004; see Koylum, Inc. v. Peksen Realty Corp., 357 F. Supp. 2d 593, 596 (E.D.N.Y. 2005) (discussing N.Y.C.P.L.R. §§ 5001, 5004). Where, as here, damages were "incurred at various times," courts typically use the "midpoint of the accrual of damages" method to calculate interest. See, e.g., Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005). To this end, "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed is the one most commonly used." Gunawan, 897 F. Supp. 2d at 93.

---

[8] Plaintiffs do not ask for post-judgment interest in their Complaint, memorandum of law supporting their default judgment motion, or in their supporting affidavits.

Plaintiff Luna's employment with Defendants began on June 1, 2011, see Compl., ECF No. 1 ¶ 19, and the Complaint was filed on March 22, 2016, see id. Applying the reasonable intermediate date approach, the midpoint date for the purposes pre-judgment interest calculations is October 26, 2013 (the midpoint between June 1, 2011 and March 22, 2016). He is owed $43,894.50 in unpaid wages under the NYLL. With an interest rate of 9 percent, Plaintiff Luna is owed annual interest in the amount of $3,950.51 and daily interest in the amount of $10.82. Using the October 26, 2013 midpoint, Defendants owe Plaintiff Luna $13,059.74, which represents daily interest up to February 14, 2017, and an additional $10.82 in interest each day until judgment is entered.

Plaintiff Castro's employment with Defendants began on June 1, 2013, see Compl., ECF No. 1 ¶ 23, and the Complaint was filed on March 22, 2016, see id. Applying the reasonable intermediate date approach, the midpoint date for the purposes pre-judgment interest calculations is October 26, 2014 (the midpoint between June 1, 2013 and March 22, 2016). He is owed $22,262.50 in unpaid wages under the NYLL. With an interest rate of 9 percent, Plaintiff Castro is owed annual interest in the amount of $2,003.63 and daily interest in the amount of $5.49. Using the October 26, 2013 midpoint, Defendants owe Plaintiff Castro $6,626.43, which represents daily interest up to February 14, 2017, and an additional $5.49 in interest each day until judgment is entered.

Plaintiff Sanchez's employment with Defendants began on May 15, 2012, see Compl., ECF No. 1 ¶ 27, and the Complaint was filed on March 22, 2016, see id. Applying the reasonable intermediate date approach, the midpoint date for the purposes pre-judgment interest calculations is April 18, 2014 (the midpoint between May 15, 2012 and March 22, 2016). He is owed $38,080.00 in unpaid wages under the NYLL. With an interest rate of 9 percent, Plaintiff

Castro is owed annual interest in the amount of $3,427.20 and daily interest in the amount of $9.39. Using the October 26, 2013 midpoint, Defendants owe Plaintiff Sanchez $11,333.73, which represents daily interest up to February 14, 2017, and an additional $9.39 in interest each day until judgment is entered.

## III. CONCLUSION

In light of the foregoing, The Court respectfully recommends that the District Judge enter default judgment against Defendants as set forth above, hold that Defendants are jointly and severally liable for the following total damages awards as follows, and deny all other requests for relief:

First, the Court respectfully recommends that the District Judge **hold** that Defendants are liable for the following in damages to Plaintiff Luna: **$2,457.00** for unpaid wages; **$41,437.50** for unpaid overtime premium pay for hours worked in excess of forty hours per week; **$10,000.00** for no-notice damages; and **$43,894.50** in liquidated damages, for a pre-interest damage award of **$97,789.00**. The Court also recommends awarding Plaintiff Luna pre-judgment interest in the amount of **$13,059.74**, along with an additional **$10.82** per day until judgment is entered.

Second, the Court respectfully recommends that the District Judge **hold** that Defendants are liable for the following in damages to Plaintiff Castro: **$10,450.00** for unpaid wages; **$11,812.50** for unpaid overtime premium pay for hours worked in excess of forty hours per week; **$10,000.00** for no-notice damages; and **$22,262.50** in liquidated damages, for a pre-interest damage award of **$54,525.00**. The Court also recommends awarding Plaintiff Castro pre-judgment interest in the amount of **$6,626.43**, along with an additional **$5.49** per day until judgment is entered.

Third, the Court respectfully recommends that the District Judge **hold** that Defendants are liable for the following in damages to Plaintiff Sanchez: **$10,780.00** for unpaid wages; **$27,300.00** for unpaid overtime premium pay for hours worked in excess of forty hours per week; **$10,000.00** for no-notice damages; and **$38,080.00** in liquidated damages, for a pre-interest damage award of **$86,160.00**. The Court also recommends awarding Plaintiff Castro pre-judgment interest in the amount of **$11,333.73**, along with an additional **$9.39** per day until judgment is entered.

## IV. OBJECTIONS

This report and recommendation will be filed electronically, and Chambers will mail a copy to each Defendant at c/o Gon Way Construction, Inc., 33-21 Farrington Street, Flushing, NY 11354.

Written objections to this report and recommendation must be filed within fourteen days of service and in accordance with the Individual Rules of the Honorable Alleyne R. Ross. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  Brooklyn, New York
          February 14, 2017

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge